**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| CFX US Co., Inc., et al.,[1] | : | Case No. 22-10022 (DSJ) |
| Debtors. | : | |
| | : | (Jointly Administered) |
| | : | |
| | : | |
| | : | |

## JOINT CHAPTER 11 PLAN OF LIQUIDATION
### (SUBCHAPTER V)

George P. Angelich
Patrick Feeney
**ARENT FOX LLP**
1301 Avenue of the Americas
Floor 42
New York, NY 10019-6040
Telephone: (212) 484-3900
Facsimile: (212) 484-3990
george.angelich@arentfox.com
patrick.feeney@arentfox.com

Justin A. Kesselman (*pro hac vice* pending)
**ARENT FOX LLP**
800 Boylston Street
Prudential Tower, Floor 32
Boston, MA 02199
Telephone: (617) 973-6102
Facsimile: (617) 367-2315
justin.kesselman@arentfox.com

Dated: January 11, 2022

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: CFX US Co., Inc. (5846) and CFX CDO Co., Inc. (1390). The location of the Debtors' service address is: Arent Fox LLP, Attn: George P. Angelich, 1301 Avenue of the Americas, Floor 42, New York, New York 10019.

AFDOCS/25153069.2

## INTRODUCTION

The above-captioned debtors and debtors-in-possession, CFX US Co., Inc. ("CFX US") and CFX CDO Co., Inc. ("CFX CDO") (together, the "Debtors" or the "Company") respectfully propose this Joint Chapter 11 Plan of Liquidation pursuant to Sections 1129 and 1191 of Bankruptcy Code (the "Plan"). This Plan provides creditors and interest holders of the Debtors with information concerning the method by which the Debtors plan to liquidate their business and provide for distributions to creditors. **If the Court confirms the Plan, it will be binding on the Debtors, their creditors, equity holders, and other interested parties.**

This Plan is designed to maximize the value of the Debtors' assets for the benefit of creditors and interest holders. Prior to entering Subchapter V of Chapter 11, the Debtors conducted an extensive marketing process for the potential sale of their business, which ultimately resulted in the sale of their brand and inventory to AS Beauty Group, LLC ("AS Beauty"), with the support of the Debtors' secured lenders, Beauty Holdco LLC ("BHC") and the Missouri Local Government Employees Retirement System ("MOLAGERS"). The transaction with AS Beauty resulted in the complete satisfaction and discharge of BHC's secured debt and a partial pay-down of MOLAGERS' secured debt, the outstanding amount of which remains significantly greater than the value of the Debtors' assets.

The Plan contemplates the continued operation of the Debtors' remaining business, the continued transition of the Debtors' brand to AS Beauty, the collection of accounts receivable, earn-outs, and recoveries on any causes of action to fund an orderly claim reconciliation process and distributions to creditors, and ultimately a post-Effective Date wind-down of the Debtors' Estates. MOLAGERS, which holds valid perfected security interests in the Debtors' cash, receivables and other assets, has provided support for the Plan through, among other things, the consensual use of its cash collateral to fund the Company's business affairs, including: (i) the cost of collecting receivables and reconciling Claims in accordance with an agreed Budget; (ii) payment of allowed administrative and priority claims; and (iii) a carve-out of up to $50,000.00 to pay General Unsecured Creditors. The Plan will allow general unsecured creditors to receive a meaningful distribution, whereas a hypothetical Chapter 7 liquidation would likely result in no recovery to general unsecured creditors. Instead, the Debtors' cash and receivables would be turned over to MOLAGERS.

The Effective Date of the Plan will be the first Business Day that is at least 14 days following the entry of the Confirmation Order, assuming there has not been an appeal from, or order staying the effectiveness of, the Confirmation Order. The Debtors may at their sole discretion waive 14-day requirement and go effective at any time after confirmation of the Plan. The Debtors believe this Plan represents the best possible return to holders of Claims and that confirmation of the Plan is in the best interests of the Debtors, their Creditors, and equity interest holders. **Accordingly, the Debtors strongly urge you to vote in favor of this Plan.**

## BACKGROUND

### A. Description and History of the Debtors' Business

CFX US is a Delaware corporation and a wholly-owned subsidiary of Cover FX Skin Care Holdings ULC, a company incorporated and existing under the laws of Nova Scotia, Canada ("ParentCo").  ParentCo also holds 100% of the shares of CFX CDO, a company incorporated and existing under the laws of Ontario, Canada.[2]  The Company was founded in 2000 and originated from a Toronto, Canada clinic for woman with skin issues and sensitivities.  The Company historically operated as a cosmetics and skincare producer with a focus on clean, high-performance, vegan, and cruelty-free products.  CFX US is responsible for substantially all of the Company's sales, accounting, marketing, e-commerce, back-office, personnel and owns the majority of the business's cash and receivables.  CFX CDO owned substantially all of the Company's intellectual property, as well as various proprietary technologies and formulas, which were incorporated into the products sold by CFX US.

### i.      The Debtors' Business

Until recently, the Debtors advertised, marketed, and sold their products through various distribution channels, including their own direct-to-consumer e-commerce website, authorized retailer websites, and brick-and-mortar retail stores.  Prior to the COVID-19 pandemic, the Debtors' products were primarily sold through brick-and-mortar sales channels, with a trend toward increased e-commerce sales.  However, the pandemic caused the Debtors' traditional retailers to reset shelf space, reduce inventory levels, and change purchasing patterns.  As discussed below, these changes ultimately had a substantial impact on the Debtors' business model.

### ii.      The Debtors' Prepetition Debt Structure

Prior to the sale transaction with AS Beauty, the Debtors had secured debts in excess of $7 million, consisting of (a) $250,169 owed to BHC on account of a secured Promissory Note dated November 15, 2019; and (b) approximately $6,870,000 owed to MOLAGERS on account of (i) a secured Promissory Note dated November 29, 2019, and (ii) a secured Promissory Note dated May 14, 2020.  BHC is a shareholder of ParentCo and MOLAGERS is an investor in BHC.  As of the Petition Date, the Debtors had no remaining liabilities to BHC and owed approximately $6,750,000 to MOLAGERS.  The Debtors' liabilities to MOLAGERS are secured by security agreements and other instruments encumbering the Debtors' cash, accounts receivable, proceeds and other assets.  The Debtors believe that MOLAGERS' liens on such assets were properly perfected under applicable law prior to the Petition Date, that MOLAGERS' is in the first (and only) secured position with respect to such assets, and that such assets are not sufficient to satisfy the Debtors' prepetition obligations to MOLAGERS.

As of the Petition Date, Debtors estimated they had approximately $525,000 in general unsecured liabilities (exclusive of any MOLAGERS deficiency claim and disputed or subordinated claims hereunder), consisting largely of obligations to suppliers and trade vendors.

## B.  Events Leading to the Debtors' Filing for Chapter 11 Relief

---

[2] In accordance with the terms of the Debtors' transaction with AS Beauty, CFX US and CFX CDO changed their names from Cover FX Skin Care Limited and Cover FX Skin Care Inc., respectively, prior to the Petition Date.

AFDOCS/25153069.2

Over the course of 2020 through mid-2021, Company suffered significant setbacks from the loss of its two largest customers, Sephora and Ulta Beauty LLC ("Ulta"). Although the compounding effects of COVID-19 pushed the Company toward DTC and e-commerce with some success, the growth in that aspect of the Company's business was not rapid enough to make up for the loss of the Sephora and Ulta sales channels.

In 2019, sales for Sephora totaled $6.1 million—more than 40% of the Debtors' US retail business and nearly a third of the Debtors' overall business. However, by May 6, 2020, the Company and Sephora entered into a Termination and Release Agreement and a Settlement Agreement on November 19, 2020 which closed out the business relationship.

The Debtors entered 2021 with an ambitious, strategic growth plan intended to scale revenue, improve margins and spread brand awareness to accord with the macroeconomic shift in retail business toward online markets. In particular, the Debtors sought to expand their distribution internationally, leverage its influencer network and social media presence to grow brand awareness, drive customers to its DTC website and partner with new and existing third-party e-commerce retailers, and develop new products to expand its catalog.

The Debtors' strategy was disrupted when they received notice in late June 2021 that Ulta would seek to end its brick-and-mortar relationship with the Debtors. Following the termination of the Sephora relationship in 2020, Ulta accounted for nearly half of the Company's U.S. retail business and more than 30% of the company's business overall. With the combined loss of Sephora and Ulta over a two-year period, the Debtors stood to lose two-thirds of their business.[3] Although the Debtors saw increases year-over-year in its e-commerce business, and projected substantial increases in its e-commerce sales over the coming years, those increases would not be sufficient to cover the loss of business from both Sephora and Ulta. It became clear that, although the brand still had the potential for growth and sustainability and remains viable, Debtors themselves needed to consider strategic alternatives.

In August 2021, the Debtors began to seek strategic alternatives for their business, including capitalization partners and potential sale opportunities. On August 18, 2021, the Company retained SSG Capital Advisors, LLC ("SSG") to serve as its investment banker, market the Company's assets, and locate potential investors. During the process, SSG contacted a total of 276 potential interested parties, of which 38 executed NDAs to access the data room maintained by SSG. Ultimately, four parties submitted indications of interest in a potential transaction (each an "IOI").

On October 11, 2021, the Debtors selected an IOI submitted by a party other than AS Beauty ("Confidential Bidder X"). The Debtors committed significant resources to the potential transaction with Confidential Bidder X. On November 30, 2021, citing concerns such as the surge in the Omicron variant of COVID-19, Confidential Bidder X withdrew from the transaction and refused to proceed with the transaction. After the withdrawal of Confidential Bidder X, the Company re-engaged with other interested parties and ultimately elected to pursue a transaction with AS Beauty.

## C. AS Beauty Transaction

---

[3]   In 2019, Sephora and Ulta sales totaled approximately $13.6 million. Company sales in all markets totaled approximately $19.7 million.

AFDOCS/25153069.2

On December 23, 2021, the Company sold the brand, e-commerce platform and inventory to AS Beauty in exchange for: (i) $1 million in cash consideration; and (ii) an earn-out equal 7.5% of net sales for thirty (30) months ("AS Beauty Sale"). The Company retained its cash, receivables existing as of the closing, and other assets. The $1 million in cash was used to pay BHC's secured debt in full, a portion of MOLAGERS' secured debt, warehouse charges necessary to facilitate the release of inventory free and clear of any warehouseman liens, and other costs at closing. The Debtors continue to transition certain elements of the "Cover FX" brand to AS Beauty pursuant to the Asset Purchase Agreement and related agreements with AS Beauty.

The transaction left the Debtors with cash and accounts receivable to fund their remaining operations, including the collection of receivables, fulfilling obligations in connection with the transition to AS Beauty, and paying creditors with MOLAGERS' support in accordance with the Budget and Plan. As part of the transaction, the Debtors assigned the earn-out stream to MOLAGERS in exchange for a release of its liens on the assets sold to AS Beauty. Based on projections by its advisors, the Company estimated the earn-out to be worth between approximately $750,000 and $1,237,500, depending on the growth of the brand during the earn-out period.

As set forth below and in the attached projections, the Plan is premised on a Secured Creditor Compromise that contemplates, among other things, (a) distributions to MOLAGERS being funded, in part, through the maintenance of the earn-out assignment; (b) a carve-out of $50,000 in collected accounts receivable from MOLAGERS' security interests in order to fund a distribution to general unsecured creditors; and (c) mutual releases between the Debtors and MOLAGERS.

### D. Liquidation Analysis

Pursuant to Bankruptcy Code section 1129(a)(7), in order for this Plan to be confirmed, each creditor must either have voted to accept this Plan (or be deemed to have accepted this Plan), or this Plan must provide for each creditor to receive at least as much as it would as of the Effective Date if the Debtors were liquidated under Chapter 7 on such date.

Here, a detailed liquidation analysis is set forth in **Exhibit A** to this Plan. Section 1129(a)(7) is satisfied because the Plan provides for the following treatment with respect to parties entitled to vote on the Plan: (a) holders of allowed general unsecured claims will receive a *pro rata* share of the Class 4 Distribution Amount which is an amount materially greater than the amount such creditors would be expected to receive in a hypothetical chapter 7 liquidation; and (b) holders of allowed secured claims will receive treatment pursuant to the Secured Creditor Compromise in exchange for their support and vote in favor of the Plan.

### E. The Debtors' Ability to Make Payments Under this Plan

In order for the Court to confirm this Plan, the Debtors' must demonstrate that they will have enough cash over the life of the Plan to make the payments required hereunder. With the assistance of its advisors, the Debtors developed the projections attached hereto as **Exhibit B**, which demonstrate Debtors' cash flow projections and its ability to satisfy Allowed Claims in accordance with this Plan.

5

**SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1193 OF THE BANKRUPTCY CODE, FEDERAL RULE OF BANKRUPTCY PROCEDURE 3019 AND THIS PLAN, THE DEBTORS RESERVE THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE, OR WITHDRAW THIS PLAN PRIOR TO ITS EFFECTIVE DATE.**

## ARTICLE I – DEFINITIONS, RULES OF INTERPRETATION, AND CONSTRUCTION

A. <u>Defined Terms</u>. As used herein, the following terms have the respective meanings specified below, except as expressly provided in other Sections of the Plan, unless the context otherwise requires (such meanings to be equally applicable to both the singular and plural, and masculine and feminine, forms of the terms defined).  Any capitalized term used in the Plan but not defined herein that is used in the Bankruptcy Code or Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or Bankruptcy Rules.

1.  "<u>Administrative Claim</u>" means a Claim for any expense Allowed under Bankruptcy Code §§ 503(b) or 507(b), and entitled to priority under Bankruptcy Code § 507(a)(2), including: (a) the actual and necessary costs and expenses incurred in the ordinary course of the Debtors' business; (b) actual and necessary costs and expenses of preserving the Estate or administering the Chapter 11 Cases; and (c) all Professional Fee Claims to the extent Allowed by Final Order under Bankruptcy Code §§ 330, 331, or 503.

2.  "<u>Allowed</u>" means, with respect to any Claim or Interest, such Claim or Interest or any portion thereof that the Debtors have assented to the validity of or that has been (a) expressly allowed under the Plan, (b) that is not Disputed, (c) that is either allowed or determined by a Final Order of a court of competent jurisdiction, or (d) that is agreed to by the Debtors or Plan Administrator and the holder of such Claim or Interest.

3.  "<u>Available GUC Cash</u>" means the total amount of Cash available for distribution to Holders of Allowed General Unsecured Claims, which shall consist of (a) up to $50,000.00 in Cash reserved by the Debtors from the collection of accounts receivable, subject to and in accordance with the Secured Creditor Compromise; and (b) any other asset of the Debtors or Estates that is (i) liquidated to Cash; (ii) not encumbered by a perfected security interest of MOLAGERS or the Holder of an Other Secured Claim; and (iii) not utilized to pay Administrative Claims, MOLAGERS Secured Claims, Other Secured Claims, Priority Tax Claims, Other Priority Claims, or the Plan Administrator's costs, fees, or expenses, including but not limited Plan Administrator Professional Fees.

4.  "<u>Bankruptcy Code</u>" means Title 11 of the United States Code as of the Petition Date.

5.  "<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the Southern District of New York, which has jurisdiction over the Chapter 11 Case.

6.  "<u>Bankruptcy Rules</u>" means the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Cases or proceedings therein, and the Local Rules of the

6

Bankruptcy Court, as applicable to the Chapter 11 Cases or proceedings therein, as the case may be.

7.   "Business Day" means any day, excluding Saturdays, Sundays, and "legal holidays" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in New York City.

8.   "Budget" shall have the meaning set forth in the *Proposed Order and Stipulation (I) Granting Adequate Protection and (ii) Authorizing Use of Cash Collateral* [Doc. No. 4] (as it may be amended and supplemented, the "Cash Collateral Stipulation").

9.   "Cash" means currency, checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified checks, money orders, negotiable instruments, and wire transfers of immediately-available funds.

10.   "Causes of Action" means any and all actions, claims, proceedings, causes of action, suits, accounts, demands, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, and whether asserted or assertable directly or derivatively, in law, equity or otherwise, including actions brought prior to the Petition Date, actions under chapter 5 of the Bankruptcy Code, and actions against any Person or entity for failure to pay for products or services provided or rendered by the Debtors, all claims, suits or proceedings relating to enforcement of the Debtors' intellectual property rights, including patents, copyrights and trademarks, and all claims or causes of action seeking recovery of the Debtors' accounts receivable or other receivables or rights to payment created or arising in the ordinary course of the Debtors' businesses, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date.

11.   "Chapter 11 Cases" means the case under chapter 11 of the Bankruptcy Code for the Debtors pending before the Bankruptcy Court under Case No. 22-10022 and Case No. 22-10023.

12.   "Claim" means a claim against the Debtors or its property as defined in Bankruptcy Code § 101(5).

13.   "Claim Objection Deadline" means the first Business Day that is one hundred eighty (180) days after the Effective Date.

14.   "Class" means a category consisting of holders of Claims or Interests substantially similar in nature to the Claims or Interests of other holders placed in that category, as designated in Article III of the Plan.

15.   "Class 4 Distribution Amount" shall be an amount of Cash equal to the lesser of: (a) the Available GUC Cash and (b) the amount of Allowed Class 4 Claims.

7

16. "<u>Class 5 Distribution Amount</u>" shall be an amount equal to the Available GUC Cash remaining, if any, after payment of the Class 4 Distribution Amount.

17. "<u>Confirmation Date</u>" means the date the Bankruptcy Court enters the Confirmation Order.

18. "<u>Confirmation Hearing</u>" means the hearing held by the Bankruptcy Court to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

19. "<u>Confirmation Order</u>" means the order(s) confirming the Plan in accordance with the provisions of the Bankruptcy Code.

20. "<u>Cure</u>" means the payment of Cash by the Debtors, or the distribution of other property (as the parties may agree or the Bankruptcy Court may order), as necessary to cure monetary defaults under an Executory Contract of the Debtors and to permit the Debtors to assume that contract or lease under § 365(a) of the Bankruptcy Code.

21. "<u>Cure Schedule</u>" means the schedule of proposed Cure amounts for any Executory Contract proposed to be assumed for which the Debtors proposes a Cure amount other than $0.00, as the same may be amended, modified, or supplemented from time to time and which will be included in the Plan Supplement.

22. "<u>Disputed</u>" means, as to any Claim (or portion thereof) or Interest against the Debtors, a Claim or Interest to the extent the allowance of such Claim or Interest is the subject of (i) a timely objection or request for estimation in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Confirmation Order, and which objection, request for estimation or dispute has not been withdrawn, with prejudice, or determined by an order of the Bankruptcy Court, or (ii) a dispute that is being adjudicated by a court of competent jurisdiction in accordance with non-bankruptcy law.

23. "<u>Effective Date</u>" means the date on which this Plan shall take effect, which date shall be a Business Day on or after the Confirmation Date on which all conditions precedent to the effectiveness of this Plan specified in Article IX, have been satisfied, or, if capable of being waived, waived, which date shall be specified in a notice filed by the Debtors with the Bankruptcy Court.

24. "<u>Estates</u>" means the bankruptcy estates of the Debtors created pursuant to § 541 of the Bankruptcy Code.

25. "<u>Exculpated Parties</u>" means each of the following solely in their capacity as such: (a) the Debtors, (c) the Debtors' directors and officers, (d) the Professionals, and (e) only to the extent found to be fiduciaries of the Estate, the Debtors' shareholders, trustees, employees, advisors, professionals, and agents.

26. "<u>Executory Contract</u>" means any contract to which any Debtor is a party that is subject to assumption or rejection under §§ 365 or 1123 of the Bankruptcy Code.

AFDOCS/25153069.2

27. "<u>Final Order</u>" means an order as to which the time to appeal, petition for *certiorari*, or move for re-argument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for re-argument or rehearing shall then be pending or as to which any right to appeal, petition for *certiorari*, move for re-argument, or rehearing shall have been waived in writing or, in the event an appeal, writ of *certiorari*, or re-argument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or *certiorari* has been denied, or from which re-argument or rehearing was sought, and the time to take any further appeal, petition for *certiorari*, or motion for re-argument or rehearing shall have expired.

28. "<u>General Unsecured Claim</u>" means any Claim against any Debtor existing as of the Petition Date other than any MOLAGERS Secured Claim, Other Secured Claim, Administrative Claim, Priority Tax Claim, Other Priority Claim, or Subordinated Unsecured Claim.

29. "<u>Holder</u>" means a Person or entity holding a Claim or Interest.

30. "<u>Impaired</u>" means impaired within the meaning of § 1124 of the Bankruptcy Code.

31. "<u>Insurance Policy</u>" means any issued policy of insurance and any agreements relating thereto covering the Debtors, the Debtors' Estates or their assets, directors, officers, members, managers, employees and fiduciaries, or that may be available to provide coverage for Claims against any Debtor or any of the foregoing, including without limitation any general liability, property, workers compensation, casualty, umbrella or excess liability policy(ies), errors and omissions, director and officer or similar executive, fiduciary and organization liability policy(ies) (A, B or C coverage), and any tail with respect thereto.

32. "<u>Intercompany Liabilities</u>" means any liability of (a) a Debtor to another Debtor, or (b) any Debtor to ParentCo.

33. "<u>Interest</u>" means any equity interest in the Debtors represented by any certificated or uncertificated shares or membership interest issued to any Person before the Effective Date, and any warrants, options, or rights to purchase any equity interest.

34. "<u>MOLAGERS Secured Claim</u>" means any Claim of MOLAGERS to the extent such claim is (a) secured by a Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

35. "<u>Other Priority Claim</u>" means any Claim (or portion of a Claim) entitled to priority under Bankruptcy Code § 507(a) other than Priority Tax Claims and Administrative Claims.

36. "<u>Other Secured Claim</u>" means a Claim, other than the MOLAGERS' Secured Claim, which is (a) secured by a Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

9

37.  "Person" means an individual, corporation, partnership, limited liability company (including its members), joint venture, trust, estate, unincorporated association, unincorporated organization, governmental entity, or political subdivision thereof, or any other entity.

38. "Petition Date" means January 11, 2022, the date on which the Debtors commenced the Chapter 11 Cases.

39. "Plan Administrator" means the Person or Entity appointed by the Debtors and approved by the Court as Plan Administrator pursuant to Article IV.B of the Plan.

40. "Plan Administrator Agreement" means the Agreement between the Debtors and the Plan Administrator to be included in the Plan Supplement.

41. "Plan Supplement" means the supplement to the Plan, if any, which is incorporated fully into the Plan, that will contain the exhibits and Plan documents necessary and appropriate to implement the terms of the Plan, and which shall be filed by the Debtors no later than fifteen (15) days prior to the Confirmation Hearing or such other date as may be approved by the Bankruptcy Court, including any amendments, modifications, and/or supplements thereto.

42. "Priority Tax Claim" means any Claim of a Governmental Unit, as defined in § 101(27) of the Bankruptcy Code, entitled to priority under Bankruptcy Code § 507(a)(8).

43. "Professional Fee Claim" means an Administrative Claim for compensation and reimbursement of expenses of a Professional incurred before the Effective Date submitted in accordance with Bankruptcy Code §§ 328, 330, 331, or 503(b).

44. "Professional" means a Person: (a) employed in the Chapter 11 Cases pursuant to an order of the Bankruptcy Court under Bankruptcy Code §§ 327, 328, 363, or 1103 and compensated for services under Bankruptcy Code §§ 327, 328, 329, 330, and 331 or order of the Bankruptcy Court; or (b) for whom compensation and reimbursement has been Allowed by a Final Order under Bankruptcy Code § 503(b).

45. "Professional Fee Bar Date" means the first Business Day that is 30 days after the Effective Date.

46. "Pro Rata" means a proportionate share, such that the ratio of the consideration distributed on account of an Allowed Claim in a Class to the amount of that Allowed Claim is the same as the ratio of all consideration distributed on account of all Allowed Claims in that Class to the amount of all Allowed Claims in that Class.

47. "Secured Creditor Compromise" shall have the meaning set forth in Article IV.B of the Plan.

48. "Subordinated Unsecured Claim" means any Claim that has been subordinated in priority and right to payment of General Unsecured Claims and includes, without limitation, any Claim for any fine, penalty, or forfeiture or for exemplary or punitive

AFDOCS/25153069.2

damages, or Intercompany Liabilities, arising before the Petition Date, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such Claim

49. "Trustee" means the trustee appointed in these Chapter 11 Cases pursuant to section 1183 of the Bankruptcy Code.

50. "Unexpired Lease" means a lease of nonresidential real property to which Debtor is a party that is subject to assumption or rejection under §365 of the Bankruptcy Code.

51. "Unimpaired" means, with respect to a Class of Claims or Interests, such Class is not Impaired.

52. "U.S. Trustee" is the Office of the United States Trustee for Region 2.

B. Rules of Construction.

1. Generally. For purposes of the Plan: (i) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified or supplemented; (ii) unless otherwise specified, all references in the Plan to Sections, Articles, and exhibits are references to Sections, Articles, and exhibits of or to the Plan; and (iii) the rules of construction set forth in section 102 of the Bankruptcy Code and the Bankruptcy Rules shall apply unless superseded herein or in the Confirmation Order.

2. Time Periods. In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

3. Miscellaneous Rules. (i) The words "herein," "hereof," "hereunder," and other words of similar import refer to the Plan as a whole, not to any particular Section, subsection, or clause, unless the context requires otherwise; (ii)    whenever it appears appropriate from the context, each term stated in the singular or the plural includes the singular and the plural, and each pronoun stated in the masculine, feminine or neuter includes the masculine, feminine, and the neuter; and (iii) captions and headings to Articles and Sections of the Plan are inserted for convenience of reference only and are not intended to be a part or to affect the interpretation of the Plan.

## ARTICLE II – TREATMENT OF UNCLASSIFIED CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, and Priority Tax Claims are not classified and are not entitled to vote on the Plan.

A. Administrative Claims. Except to the extent that a Holder of an Allowed Administrative Claim and either the Debtors or Plan Administrator, as applicable, agree to less favorable treatment, each Holder of an Allowed Administrative Claim (other than Professional Fee Claims) will, in exchange for full and final satisfaction, settlement, release, and discharge of such Allowed

11

Administrative Claim, be paid the full unpaid amount of such Allowed Administrative Claim in Cash within not more than three (3) years after the Effective Date,[4] though the Debtors will endeavor to pay such claims as soon as is reasonably practicable, *provided*, *however*, that Administrative Claims incurred by the Debtors in the ordinary course of business shall be paid in the ordinary course of business in accordance with such applicable terms and conditions relating thereto without further notice to or order of the Bankruptcy Court and any that cure amounts related to executory contracts that are assumed shall be paid in full in connection with such assumption as set forth elsewhere herein.

B. Professional Fee Claims. Each Allowed Professional Fee Claim shall be paid in full in Cash on the later of: (a) three days after the Professional Fee Claim is Allowed; and (b) another date on which the holder of the Professional Fee Claim and the Debtors or Plan Administrator agree. Each Person seeking an award by the Bankruptcy Court of Professional Fees must file with the Bankruptcy Court and serve on the Debtors its final application for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by the Professional Fee Bar Date.

C. Priority Tax Claims. Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, release, and discharge of each Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim due and payable on or prior to the Effective Date shall receive the treatment set forth in section 1129(a)(9)(C) of the Bankruptcy Code. To the extent any Allowed Priority Tax Claim is not due and owing on or before the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Debtors and such Holder or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business.

## ARTICLE III – CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS; ACCEPTANCE OR REJECTION OF THE PLAN

A. Classification and Treatment Generally. Pursuant to sections 1122, 1123 and 1190 of the Bankruptcy Code, set forth below is a designation of Classes of Claims and Interests, which are placed in a particular Class for all purposes under the Plan, including, without limitation, voting, confirmation, and receiving distributions under the Plan, as set forth herein. In accordance with section 1123(a)(1) of the Bankruptcy Code, Claims arising under sections 507(a)(2) or 507(a)(8) of the Bankruptcy Code are not classified and their treatment is set forth in Article II.

B. Classification and Treatment of Classified Claims and Interests. Classified Claims and Interests are divided into numbered classes as follows:

| Class | Treatment | Entitled To Vote |
|---|---|---|
| Class 1 – Other Priority Claims | Unimpaired | No (Deemed to Accept) |
| Class 2 – MOLAGERS Secured Claims | Impaired | Yes |
| Class 3 – Other Secured Claims | Unimpaired | No (Deemed to Accept) |
| Class 4 – General Unsecured Claims | Impaired | Yes |
| Class 5 – Subordinated Unsecured Claims | Impaired | Yes |

---

[4] Section 1191(E) of the Bankruptcy Code permits certain administrative claims to be paid through the Plan.

AFDOCS/25153069.2

| Class 6 – Interests | | Unimpaired | No (Deemed to Accept) |

1. <u>Class 1: Other Priority Claims</u>

   a. Treatment: Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, in exchange for full and final satisfaction of such Claim, each Holder shall receive payment of its Allowed Other Priority Claim in full in cash on, or as soon as reasonably practicable thereafter, the later of (a) the Effective Date and (b) the date on which such Claim becomes an Allowed Other Priority Claim.

   b. Impairment and Voting: Class 1 is Unimpaired and all Holders of Class 1 Claims are conclusively deemed to have accepted the Plan and are not entitled to vote on the Plan.

2. <u>Class 2: MOLAGERS Secured Claim</u>

   a. Treatment: In full and final satisfaction of the MOLAGERS Secured Claim, MOLAGERS shall receive treatment in accordance with the Secured Creditor Compromise.

   b. Impairment and Voting: Class 2 is Impaired and each Holder of a Class 2 Claim is entitled to vote on the Plan.

3. <u>Class 3: Other Secured Claims</u>[5]

   a. Treatment: Except to the extent that a Holder of an Other Secured Claim agrees to less favorable treatment, each holder of an Other Secured Claim shall receive at the option of the Debtors and in exchange for full and final satisfaction of such Other Secured Claim, (i) cash in an amount equal to the allowed amount of such Other Secured Claim, on the later of the Effective Date and the date on which such Other Secured Claim becomes allowed; (ii) delivery of the collateral securing such Other Secured Claim and payment of any interest required by Bankruptcy Code Section 506(b)); or such other treatment necessary to satisfy the applicable requirements of Bankruptcy Code Sections 1129 and 1191. Each Holder of an Allowed Other Secured Claim shall retain the liens securing such claim as of the Effective Date until full and final satisfaction of the claim is made as provided herein, after which such liens shall be deemed released, terminated, and extinguished, in each case without further notice or order of the Court.

   b. Impairment and Voting: Class 3 is Unimpaired and all Holders of Class 3 Claims are conclusively deemed to have accepted the Plan and are not entitled to vote on the Plan.

4. <u>Class 4: General Unsecured Claims</u>

   a. Treatment: Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, each such Holder shall,

---

[5] The Debtors are not aware of any existing Other Secured Claims.

13

in exchange for full and final satisfaction of such Claim, receive its *pro rata* portion of the Class 4 Distribution Amount, subject to the terms and conditions of the Secured Creditor Compromise.

b. Impairment and Voting: Class 4 is Impaired and all Holders of Allowed Class 4 Claims are entitled to vote on the Plan.

5.  Class 5: Subordinated Unsecured Claims

a. Treatment: Upon the payment in full and satisfaction of all Class 4 Claims, except to the extent that a Holder of a Subordinated Unsecured Claim agrees to less favorable treatment, each such Holder shall, in exchange for full and final satisfaction of such Claim, receive its *pro rata* portion of the Class 5 Distribution Amount.

b. Impairment and Voting: Class 5 is Impaired and all Holders of Allowed Class 5 Claims are entitled to vote on the Plan.

6.  Class 6: Interests

a. Treatment: All holders of Interests shall retain their Interests.

b. Impairment and Voting: Class 6 is Unimpaired and all Holders of Class 6 Interests are conclusively deemed to have accepted the Plan and are not entitled to vote on the Plan.

C.  Acceptance by Classes Entitled to Vote.  Classes 2, 4, and 5 are the only Classes of Claims of the Debtors that are entitled to vote to accept or reject the Plan.  Such Classes shall have accepted the Plan if (a) the Holders of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the Holders of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan, not counting the vote of any Holder designated under section 1126(e) of the Bankruptcy Code.  If there are no votes cast in the Class that is entitled to vote on this Plan, then this Plan shall be deemed accepted by such Class.

D.  Presumed Acceptance of this Plan.  Classes 1, 3, and 6 are Unimpaired.  Therefore, such Classes are deemed to have accepted the Plan by operation of law and are not entitled to vote to accept or reject the Plan.

E.  Elimination of Classes.  To the extent applicable, any Class that does not contain any Allowed Claims or any Claims temporarily allowed for voting purposes under Bankruptcy Rule 3018, as of the date of the commencement of the Confirmation Hearing, shall be deemed to have been deleted from the Plan for purposes of (a) voting to accept or reject the Plan and (b) determining whether it has accepted or rejected the Plan under section 1129(a)(8) of the Bankruptcy Code.

F.  Cramdown.  To the extent the Plan is not confirmed pursuant to section 1191(a) of the Bankruptcy Code, the Debtors request Confirmation of this Plan, as it may be modified from time to time, pursuant to section 1191(b) of the Bankruptcy Code.  The Debtors reserve the right to

14

modify this Plan to the extent, if any, that Confirmation pursuant to section 1191(b) of the Bankruptcy Code requires modification.

## ARTICLE IV – MEANS OF IMPLEMENTATION

A. <u>Limited Consolidation</u>.  The entry of the Confirmation Order shall constitute the approval, pursuant to section 105(a) of the Bankruptcy Code, effective as of the Effective Date, of the limited consolidation of each of the Debtors, and their respective estates, into CFX US for voting, confirmation, and distribution purposes under the Plan. Accordingly, on and after the Effective Date, (i) all assets and all liabilities of the Debtors shall be deemed merged into CFX US; (ii) all guaranties of any Debtor of the payment, performance, or collection of obligations of another Debtor shall be eliminated and cancelled, (iii) any obligation of any Debtor and all guaranties thereof executed by one or more of the other Debtors shall be treated as a single obligation, and such guaranties shall be deemed a single Claim against the consolidated Debtors, (iv) all joint obligations of the Debtors and all multiple Claims against such entities on account of such joint obligations shall be treated and allowed only as a single Claim against the consolidated Debtors, (v) all Claims between or among the Debtors shall be cancelled, and (vi) each Claim filed in the Chapter 11 Case of any Debtor shall be deemed filed against the consolidated Debtors and a single obligation of the consolidated Debtors on and after the Effective Date. The limited consolidation and deemed merger shall not affect (other than for purposes related to funding distributions under the Plan) (a) the legal and organizational structure of the Debtors, (b) defenses to any Causes of Action or requirements for any third party to establish mutuality to assert a right of setoff, and (c) distributions out of any insurance policies or proceeds of such policies.

B.  <u>Appointment of Plan Administrator</u>.  On the Effective Date, Huebscher & Co. shall be appointed as Plan Administrator pursuant to the Plan and the Plan Administrator Agreement, and shall be authorized to conduct the wind down of the Debtors' affairs in accordance with sections 1123 and 1184 of the Bankruptcy Code and shall have all the powers, authority and responsibilities specified in this Plan and the Plan Administrator Agreement.  Pursuant to Bankruptcy Code section 1123(b)(3), the Plan Administrator shall be deemed the appointed representative to pursue and litigate Debtor and Estate Claims and Causes of Action, including Retained Actions, and may pursue, litigate, compromise and settle any such rights, Claims, and Causes of Action in accordance with the best interests of and for the benefit of the holders of Claims.

C.  <u>Management of the Post-Effective Date Operations</u>.  On and after the Effective Date, all property of the Debtors shall be managed and administered by the Plan Administrator, including but not limited to the Budget, management of Cash, collection of receivables, pursuit of Causes of Action, reconciliation of Claims, and administration of distributions in accordance with the Plan. On and the Effective Date, the Plan Administrator shall be funded with any remaining and unused assets in the Budget and shall continue to have access to such Budget until the Plan Administrator's duties have been completed, *provided that*: (a) such use shall conform to the Cash Collateral Stipulation in all respects other than (i) its term, (ii) as otherwise agreed by MOLAGERS, or (iii) pursuant to a Court Order; and (b) unused funds allocated to Professionals in the Budget may continue to be used to fund such Professionals in connection with any services rendered to the Plan Administrator.  If the Plan Administrator in its discretion decides not to liquidate any non-Cash property or if such property cannot, in the Plan Administrator's judgment, be liquidated in a commercially reasonable manner, the Plan Administrator shall have the right to abandon or

15

otherwise dispose of such property in its business judgment. Absent gross negligence, willful misconduct or fraud in connection therewith, no party in interest shall have a cause of action against the Plan Administrator, the Debtors or each of their respective officers, directors, employees, consultants, trustees or professionals arising from or related to the disposition or abandonment of non-Cash property in accordance with this Section.

D. <u>Termination of Trustee Service</u>. On the Effective Date, and in light of the appointment of the Plan Administrator, the services of the Trustee shall be deemed terminated in accordance with section 1183(c) and/or 1194(a)-(b), as applicable, and shall deliver all payments and other estate funds to the Plan Administrator. Although the Debtors are prepared, in accordance section 1190(2) of the Bankruptcy Code, to submit future earnings and other income to the supervision and control of the Trustee to the extent necessary to execute this Plan, such submissions shall not be necessary upon the termination of the Trustee and appointment of the Plan Administrator.

E. <u>Plan Funding</u>. Distributions under this Plan will be funded from the Debtors' cash and collection of accounts receivable in accordance with the Secured Creditor Compromise, as well as any other assets (including but not limited to Causes of Action) recovered or liquidated by the Debtors or Plan Administrator, as applicable.

F. <u>Secured Creditor Compromise</u>. On the Effective Date, the MOLAGERS Secured Claim will be deemed Allowed in the total amount of $6,771,224.80. On and after the Effective Date, MOLAGERS shall retain its prepetition liens and such liens shall expressly survive confirmation of the Plan, provided that any lien on Intercompany Claims shall be subordinated to the Class 4 Distribution Amount. MOLAGERS will assent to (a) the Debtors' continued utilization of the Budget in accordance with the Cash Collateral Stipulation; and (b) a carve-out of up to the first $50,000.00 of accounts receivable collected by the Debtors or Plan Administrator, as applicable, in these Chapter 11 Cases to be set aside for the payment of Allowed General Unsecured Claims other than any Claim of MOLAGERS (the "<u>GUC Carve-Out</u>"), but only to the extent such GUC Carve-Out is necessary to ensure that Holders of General Unsecured Claims other than MOLAGERS receive a Class 4 Distribution of at least $50,000.00 in the aggregate. For the avoidance of doubt, the GUC Carve-Out shall not be utilized to pay any Claim of MOLAGERS, *provided that* in the event Allowed General Unsecured Claims (excluding any deficiency General Unsecured Claim of MOLAGERS) total less than $50,000.00, then the amount of the GUC Carve-Out shall not be greater than the amount of such Allowed General Unsecured Claims.

MOLAGERS shall be entitled to receive any remaining Cash, property, or proceeds of property other than the GUC Carve-Out that is subject to the MOLAGERS Secured Claim, after the payment of Allowed Administrative Claims, Priority Tax Claims, Other Priority Claims, and other amounts authorized under the Cash Collateral Stipulation, which may be paid from the Budget re-allocated to the Plan Administrator. In the event MOLAGERS holds a deficiency General Unsecured Claim, MOLAGERS shall be entitled to payment of its *pro rata* share of the Class 4 Distribution Amount, but solely to the extent that both: (a) such payment may be made with GUC Available Cash other than the GUC Carve-Out; and (b) such payment does not reduce the Class 4 Distribution Amount to Holders of Allowed General Unsecured Claims other than MOLAGERS below the lesser of: (i) the amount of Allowed General Unsecured Claims other than the deficiency General Unsecured Claim of MOLAGERS, and (ii) $50,000.00.

AFDOCS/25153069.2

In exchange for the Debtors' agreement to release MOLAGERS as set forth in Article VIII.H. of the Plan, MOLAGERS agrees to opt-in to the releases set forth in Article VIII.I. of the Plan.

G. <u>Corporate Governance</u>.  On the Effective Date, the Debtors' directors, officers, consultants and employees shall be deemed terminated.  Upon the Effective Date, the Plan Administrator shall succeed to all rights, powers, and authority otherwise applicable to the Debtors' directors and officers.  Nothing contained herein shall prevent the Plan Administrator from seeking to employ any other Debtor personnel or professionals on behalf of the Debtors.

H. <u>Section 1145 Exemption</u>. In accordance with section 1145 of the Bankruptcy Code, the retention under the Plan of the Interests is exempt from all federal, state, or local law requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker dealer in such securities and is not deemed to be a public offer of such securities.

## **ARTICLE V - PLAN ADMINISTRATION**

A. <u>Post-Effective Date Operations</u>.  After the Effective Date, the Debtors shall continue to operate in accordance with this Plan, including but not limited any collection activity and the reconciliation of Claims.  Any wind-down of a Debtor or its assets (as determined for federal income tax purposes) shall occur after the Effective Date and be administered by the Plan Administrator.

B. <u>Preservation of Rights</u>. The Plan Administrator shall retain any and all rights of, and on behalf of, the Debtors and Estates not released pursuant to the terms of this Plan, to commence and pursue any and all Causes of Action, including, without limitation, setoff, offset and recoupment rights, regardless of whether or not such rights are specifically enumerated in the Plan, Plan Supplement, or elsewhere, and all such rights shall not be deemed modified, waived, released in any manner, nor shall confirmation of the Plan or the Confirmation Order act as res judicata or limit any of such rights of the Plan Administrator to commence and pursue any and all Causes of Action, including, without limitation, setoff, offset and recoupment rights, to the extent the Plan Administrator deems appropriate. Any and all Causes of Action, including, without limitation, setoff, offset and recoupment rights, may, but need not, be pursued by the Debtors prior to the Effective Date and by the Plan Administrator after the Effective Date, to the extent warranted. Subject to the other terms and provisions of this Plan, the Plan Administrator shall be granted standing, authority, power and right to assert, prosecute and/or settle the Causes of Action based upon its powers as a bankruptcy appointed representative of the Debtors' Estates with the same or similar abilities possessed by bankruptcy or insolvency trustees, receivers, examiners, conservators, liquidators, rehabilitators, creditors' committees, or similar officials or entities.

C. <u>Books and Records</u>.  Books and records, including computer generated or maintained books and records for computer data, as well as electronically generated or maintained books and records or data, along with books and records of any Debtors maintained by or in the possession of third parties shall remain property of Debtors, to be used by the Plan Administrator for the Debtors' operation, implementation of the Plan, and any wind down of the Estates.  After the Final

17

Distribution Date and these cases are closed, the Plan Administrator shall be authorized to destroy or abandon any books and records in its possession.

D. <u>Powers and Duties</u>.  From and after the Effective Date, pursuant to the terms and provisions of this Plan, the Plan Administrator shall have the power and authority to perform the acts set forth in the Plan Administrator Agreement (subject to approval of the Bankruptcy Court where applicable) in addition to any powers granted by law or conferred to it by any other provision of the Plan, including without limitation any set forth herein; provided, however that enumeration of the following powers shall not be considered in any way to limit or control the power and authority of the Plan Administrator to act as specifically authorized by any other provision of this Plan, the Plan Administrator Agreement, and/or any applicable law, and to act in such manner as the Plan Administrator may deem necessary or appropriate to take any act deemed appropriate by the Plan Administrator, including without limitation to discharge all obligations assumed by the Plan Administrator or provided herein and to conserve and protect the Debtors' assets or to confer on holders of Claims the benefits intended to be conferred upon them by this Plan.  The Plan Administrator shall be empowered to:

    a.    control and effectuate the Claims reconciliation process, including to object to, seek to subordinate, compromise, or settle any Claims against the Debtors;

    b.    take all steps and execute all instruments and documents necessary to make distributions to Holders of Allowed Claims in accordance with this Plan;

    c.    exercise its reasonable business judgment to direct and control the wind down, liquidation, sale, or abandoning of assets of the Debtors under this Plan;

    d.    prosecute all Causes of Action on behalf of the Debtors, elect not to pursue any Causes of Action, and determine whether and when to compromise, settle, abandon, dismiss, or otherwise dispose of any such Causes of Action;

    e.    act on behalf of the Debtors in all adversary proceedings and contested matters then pending or that can be commenced in the Bankruptcy Court and in all actions and proceedings pending or commenced elsewhere and to settle, retain, enforce, dispute or adjust any Claim and otherwise pursue actions involving assets of the Debtors

AFDOCS/25153069.2

that could arise or be asserted under the Bankruptcy Code, unless otherwise waived, relinquished or transferred in the Plan;

f.   establish, replenish, or release reserves as provided in this Plan;

g.   make payments to Professionals;

h.   retain professionals to assist in performing its duties under this Plan;

i.   maintain the books and records and accounts of the Debtors;

j.   invest Cash of the Debtors, including any Cash proceeds realized from the liquidation of any assets of the Debtors, including any Causes of Action, and any income earned thereon;

k.   incur and pay reasonable and necessary expenses in connection with the performance of duties under this Plan, including the reasonable fees and expenses of professionals;

l.   abandon in any commercially reasonable manner, including abandonment or donation to a charitable organization of the Plan Administrator's choice, any assets of the Debtors if they are of no benefit to the Estates or Debtors;

m.   maintain the Insurance Policies and purchase or create and carry any other insurance policies and pay all insurance premiums and costs the Plan Administrator deems necessary or advisable;

n.   administer each Debtor's tax obligations, including filing tax returns and paying tax obligations; and

o.   perform other duties and functions that are consistent with the implementation of this Plan.

E.   Compensation of Plan Administrator and Plan Administrator Professionals.   The Plan Administrator shall be compensated as set forth in the Plan Administrator Agreement, which shall be included in the Plan Supplement.  The Plan Administrator shall fully comply with the terms, conditions, and rights set forth in this Plan, the Confirmation Order, and the Plan Administrator Agreement.  The Plan Administrator shall not be required to file a fee application to receive compensation. The reasonable fees and expenses of the professional persons employed by the Plan Administrator (the "Plan Administrator Professional Fees") in connection with his or her duties and responsibilities shall be paid as set forth in this Plan.  The Plan Administrator Professional Fees shall be payable ten (10) Business Days after submission of a detailed invoice therefor to the Plan Administrator.  If the Plan Administrator disputes the reasonableness of any such invoice, the Plan Administrator or the affected professional may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of any such invoice, and the disputed portion of such

AFDOCS/25153069.2

invoice shall not be paid until the dispute is resolved.  The undisputed portion of such reasonable fees and expenses shall be paid as provided herein.

F. Resignation, Death or Removal of Plan Administrator. The Plan Administrator may resign at any time upon application to the Bankruptcy Court.  In the event of any such resignation, or the removal, death or incapacity of the Plan Administrator, the Bankruptcy Court may, upon motion of a party in interest or other request, appoint a new Plan Administrator.  No successor Plan Administrator hereunder shall in any event have any liability or responsibility for the acts or omissions of any of his or her predecessors.  Every successor Plan Administrator appointed pursuant hereto shall execute, acknowledge and file with the Bankruptcy Court an instrument in writing accepting such appointment hereunder, and thereupon such successor Plan Administrator, without any further act, shall become fully vested with all of the rights, powers, duties and obligations of his or her predecessor.  Any successor Plan Administrator shall be bound by and comply with the terms of the Plan, the Confirmation Order, and the Plan Administrator Agreement.

G. Limitation of Liability.  The Debtors shall indemnify the Plan Administrator and his or her professionals against any losses, liabilities, expenses (including attorneys' fees and disbursements), damages, taxes, suits or claims that the Plan Administrator or his or her respective professionals may incur or sustain by reason of being or having been a Plan Administrator or professionals of the Plan Administrator for performing any functions incidental to such service; provided, however, the foregoing shall not relieve the Plan Administrator or their professionals from liability for bad faith, willful misconduct, reckless disregard of duty, criminal conduct, gross negligence, fraud or self-dealing, or, in the case of an attorney professional and as required under Rule 1.8(h)(1) of the New York State Rules of Professional Conduct, malpractice.

H. Exculpation Relating to Debtors. On and after the Effective Date, the Plan Administrator and Debtors shall not have any liability to holders of Claims or Interests other than as provided for in the Plan.  The Plan will be administered and actions will be taken in the name of the Debtors through the Plan Administrator.  The Plan Administrator shall comply with all applicable provisions of the Plan.  On the Effective Date, the Plan Administrator shall assume all of its other obligations, powers and authority under the Plan.  No holder of a Claim or Interest or any other party in interest will have, or otherwise pursue, any claim or cause of action against the Plan Administrator, the Debtors,  or the employees or professionals thereof (solely in the performance of their duties), for making payments and distributions in accordance with this Plan or for fulfilling any functions incidental to implementing the provisions of this Plan or for any other conduct or decision undertaken in the course of their respective roles in these Chapter 11 Cases, or any other Exculpated Claims (as defined below), except for any acts or omissions to act that are the result of bad faith, willful misconduct, reckless disregard of duty, criminal conduct, gross negligence, fraud or self-dealing, or, in the case of an attorney professional and as required under Rule 1.8(h)(1) of the New York State Rules of Professional Conduct, malpractice.

I. Privileges.  On the Effective Date and subject to the terms of this Plan, all of the Debtors' privileges, including, but not limited to, corporate privileges, confidential information, work product protections, attorney-client privileges, and other immunities or protections relating to the

Causes of Action shall vest in the Debtors and Plan Administrator, as applicable, without waiver, limitation or release on the Effective Date.

## ARTICLE VI – EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A. <u>Assumption and Rejection of Executory Contracts and Unexpired Leases</u>.

1.   Except as otherwise provided herein, each Executory Contract and Unexpired Lease shall be deemed rejected pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless any such Executory Contract or Unexpired Lease: (1) was assumed or rejected previously by the Debtor; (2) expired or terminated pursuant to its own terms on or before the Effective Date; (3) is the subject of a motion to reject pending on the Confirmation Date; or (4) is expressly assumed in the Plan. Entry of the Confirmation Order shall constitute a Final Order approving the assumptions or rejections of such Executory Contracts or Unexpired Leases as set forth in the Plan, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

2.   All assumed Executory Contracts shall remain in full force and effect for the benefit of the Debtors, and be enforceable by the Debtors and Plan Administrator in accordance with their terms, notwithstanding any provision in such assumed Executory Contract o that prohibits, restricts or conditions such assumption, assignment or transfer. Any provision in an assumed Executory Contracts that purports to declare a breach or default based in whole or in part on commencement or continuance of these Chapter 11 Cases or any successor cases shall be deemed unenforceable. To the extent any provision in any Executory Contract assumed pursuant to the Plan (including, without limitation, any "change of control" provision) restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the Debtors' assumption of such Executory Contract, then such provision will be deemed unenforceable such that the transactions contemplated by the Plan will not entitle the non-debtor party thereto to terminate such Executory Contract to exercise any other default-related rights with respect thereto. Each Executory Contract assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the Debtors in accordance with its terms, except as such terms may have been modified by a court order or by applicable law.

B. <u>Cure of Defaults for Assumed Executory Contracts</u>.

1.   The proposed Cure amount for all Executory Contracts other than any Executory Contract that (1) was assumed or rejected previously by the Debtor; (2) expired or terminated pursuant to its own terms before the Effective Date; or (3) is the subject of a motion to reject pending on the Confirmation Date shall be $0.00 unless otherwise indicated on the Cure Schedule. The Debtors shall file the Cure Schedule as part of the Plan Supplement on or before the date that is fifteen (15) days prior to the Confirmation Hearing. The Debtors shall not be required to serve the Cure Schedule on any Executory Contract counterparty not specifically named therein. **For the avoidance of doubt, if an assumed Executory Contract between the Debtors and any non-Debtor counterparty is not listed on the Cure Schedule as an assumed Executory Contract with a proposed**

**Cure amount, then the Debtors assert that the Cure amount for such Executory Contract is $0.00.**

2.  Any counterparty to an Executory Contract that objects to (1) the assumption of such Executory Contract, (2) the proposed Cure amount, (3) the ability of the Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract to be assumed, or (4) any other matter pertaining to assumption, shall file a written objection thereto and serve it in a manner to be actually received by each of the following by no later than 4:00 p.m. (Eastern time) on the date that is seven (7) days prior to the Confirmation Hearing: counsel to the Debtors: Arent Fox LLP, 1301 Avenue of the Americas, 42nd Floor, New York, NY 10019, Attn: George P. Angelich; and Prudential Tower, 800 Boylston Street, 32nd Floor, Boston, MA 02199, Attn: Justin A. Kesselman.  Any timely filed responses or objections will be heard by the Bankruptcy Court at the Confirmation Hearing or on such other date agreed to by the parties or ordered by the Court.  Any counterparty to an Executory Contract that fails to timely object to any of the foregoing matters related to assumption will be deemed to have assented and will be deemed to have forever released and waived any such objection.  Payment of any Cure amount shall be made following the entry of a Final Order or orders resolving any dispute related thereto and approving the assumption and shall not prevent or delay implementation of the Plan or the occurrence of the Effective Date.

C.  <u>AS Beauty Agreement</u>.  Notwithstanding anything in the Plan to the contrary, as of the Effective Date, the Debtors shall assume the AS Beauty Agreement pursuant to section 365(a) of the Bankruptcy Code.   Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtors' foregoing assumption of the AS Beauty Agreement.

D.  <u>Insurance Policies</u>. Notwithstanding anything in the Plan to the contrary, as of the Effective Date, the Debtors shall assume Insurance Policy Nos. G7184173A001, 8261-2893, and C-4LQ7-015850-CYBER-2021 issued by Chubb, as well all other Insurance Policies of the Debtors and all riders, binders, endorsements, extensions, and other attachments to such Insurance Policies, pursuant to section 365(a) of the Bankruptcy Code. reservation of Insurance. Nothing contained in this Plan shall diminish or impair the enforceability of any Insurance Policy.

E.  <u>Modifications, Amendments, Supplements, Restatements, or Other Agreements</u>. Unless otherwise provided in the Plan, each Executory Contract that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated pursuant hereunder.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract, or the validity, priority, or amount of any Claims that may arise in connection therewith.

AFDOCS/25153069.2

F.  Contracts Entered into After the Petition Date.  Contracts entered into after the Petition Date by the Debtors, and any Executory Contracts assumed by the Debtor, may be performed by the Debtors in the ordinary course of business and in accordance with the terms thereof.

G.  General Reservation of Rights. Nothing contained in the Plan shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtors, or any of their affiliates, have any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors, as applicable, shall have 45 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

## ARTICLE VII – CLAIM RECONCILIATION AND DISTRIBUTIONS

A.  Plan Administrator to Make Distributions.  The Plan Administrator shall make all payments required by this Plan.  Upon the Effective Date, all payments or funds received by the Trustee, if any, during these Chapter 11 Cases shall be transmitted to the Plan Administrator after deducting any fee owed to the Trustee.

B.  Method of Payment; Payments, Filings, and Notices Only on Business Days. Payments of Cash under the Plan must be made by check drawn on a domestic bank or by wire transfer from a domestic bank.  Whenever any payment, distribution, filing, delivery, or notice to be made under the Plan is due on a day other than a Business Day, such payment, distribution, filing, delivery, or notice may instead be made, without interest or penalty, on the immediately following Business Day.

C.  Distribution Record Date.  As of the close of business on the Confirmation Date, the registers of Claims or Interests as maintained by the Debtors or their respective agents, shall be deemed closed, and there shall be no further changes in the record of Holders of any of the Claims or Interests.  The Debtors shall have no obligation to recognize any transfer of the Claims or Interests occurring on or after the Confirmation Date.

D.  Allowed Claims and Allowed Interests. Notwithstanding any provision herein to the contrary, the Debtors or Plan Administrator, as applicable, shall make distributions only to Holders of Allowed Claims.  A Holder of a Disputed Claim shall receive a Distribution on account thereof only when and to the extent that such Holder's Disputed Claim becomes an Allowed Claim.

E.  Allowance of Claims.  Except as expressly provided in this Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including, without limitation, the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under this Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including, without limitation, the Confirmation Order, in these Chapter 11 Cases allowing such Claim, *provided, that,* after the Effective Date, the Plan Administrator shall have the right to settle, compromise, or stipulate to the allowance of a Claim without any need for approval by the Bankruptcy Court.

F.  Objection to Claims.  As of the Effective Date, objections to, and requests for estimation of Claims against the Debtors may be interposed and prosecuted only by the Plan Administrator on behalf of the Debtors (except with respect to Professional Fee Claims subject to objection by

any party in interest). Such objections and requests for estimation shall be served and filed by the Claims Objection Deadline. Any Claims filed after the applicable Bar Date shall be deemed Disallowed and expunged in their entirety without further order of the Bankruptcy Court or any action being required on the part of the Debtors or the Plan Administrator unless the Person or entity wishing to file such Claim has received prior Bankruptcy Court authority to file such Claim after the applicable Bar Date.

G. <u>Amendments to Claims</u>. After the Confirmation Date, a Proof of Claim may not be amended without the authorization of the Bankruptcy Court. Any Claim amended after the Confirmation Date shall be deemed Disallowed in full and expunged without any action by the Debtors or Plan Administrator, unless the Holder of the Claim has obtained prior Bankruptcy Court authorization to file the amendment.

H. <u>Estimation of Claims</u>. For purposes of calculating and making distributions and establishing reserves under the Plan, the Plan Administrator shall be entitled to estimate, in good faith and with due regard to litigation risks associated with Disputed Claims, the maximum dollar amount of Allowed and Disputed Claims, inclusive of contingent and/or unliquidated Claims in a particular Class. The Debtors through the Plan Administrator may also at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether any party previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors through the Plan Administrator may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

I. <u>Resolution of Claims</u>. Except as otherwise provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with this Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Debtors, through the Plan Administrator shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Claims, Disputed Claims, rights, Causes of Action, suits, and proceedings, whether in law or in equity, whether known or unknown, that the Debtors or their Estates may hold against any Person, without the approval of the Bankruptcy Court, the Confirmation Order, and any contract, instrument, release, indenture, or other agreement entered into in connection herewith.

J. <u>No Recourse</u>. Notwithstanding that the Allowed amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or is Allowed in an amount for which after application of the payment priorities established by this Plan there is insufficient value to provide a recovery equal to that received by other Holders of

Allowed Claims in the respective Class, no Claim holder shall have recourse against the Debtors, Plan Administrator, any Released Party or any of their respective professionals, consultants, officers, directors, employees or members or their successors or as-signs, or any of their respective property. **THE ESTIMATION OF CLAIMS AND THE ESTABLISHMENT OF RESERVES UNDER THE PLAN MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS.**

K.  Interest on Penalties and Claims.  Unless otherwise specifically provided for in this Plan or the Confirmation Order, or required by applicable bankruptcy law, post-petition interest and penalties shall not accrue or be paid on any Claim, and no Holder of a Claim shall be entitled to interest and penalties accruing on or after the Petition Date through the date such Claim is satisfied in accordance with the terms of this Plan.

L.  Delivery of Distributions.  Subject to Bankruptcy Rule 9010, and except as set forth in this Section of the Plan, all distributions under the Plan to Holders of Allowed Claims shall be made to the Holder of each Allowed Claim at the address of such Holder as listed on the Schedules as of the Confirmation Date, unless the Debtors or Plan Administrator, as applicable, have been notified in writing of a change of address, including, without limitation, by the timely filing of a proof of claim by such holder that provides an address for such Holder different from the address reflected on the Schedules.  In the event that any Distribution to any Holder is returned as undeliverable, neither the Debtors nor Plan Administrator shall have any obligation to determine the correct current address of such Holder and no Distribution to such Holder shall be made unless and until the Debtors or Plan Administrator are notified in writing of the then-current address of such Holder, at which time such Distribution shall be made to such Holder without interest; *provided*, *however*, such Distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of sixty (60) days from the date the such Distribution is made.  After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to the Debtors automatically and without need for a further order by the Bankruptcy Court for distribution in accordance with the Plan, and the Claim of any such Holder to such property or interest in property shall be released, settled, compromised, and forever barred.

M.  Manner of Payment Under Plan.  At the option of the Debtors or Plan Administrator, as applicable, any Cash payment to be made hereunder may be made by a check or wire transfer.

N.  Setoffs and Recoupments.  The Debtors or Plan Administrator, as applicable, may but shall not be required to, set off against any Claims of any nature whatsoever that the Debtors may have against the Holder of a Claim; *provided* that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release of any Claim the Debtors may have against the Holder of such Claim.

O.  Minimum Distributions.  No payment of Cash of less than one hundred dollars ($100) shall be made by the Debtors or Plan Administrator to any Holder of an Allowed Claim unless a request therefor is made in writing to the Debtors or Plan Administrator, as applicable.  If no request is made as provided in the preceding sentence within thirty (30) days after the Effective Date, all

AFDOCS/25153069.2

such distributions shall be distributed to other holders of Allowed Claims in accordance with the Plan or as otherwise ordered by the Bankruptcy Court.

P.   <u>Withholding and Reporting Requirements</u>.   The Debtors or Plan Administrator shall be entitled to deduct any federal, state or local withholding taxes from any payments made under this Plan. As a condition to making any such payment, the Debtors or Plan Administrator may require that the holder of an Allowed Claim provide its Taxpayer Identification Number and such other information and certification as may be deemed necessary for it to comply with applicable tax reporting and withholding laws. If any Holder of an Allowed Claim fails to provide such number, information or certification within thirty (30) days from the date of first notification to the Holder of the need for such information, such Holder's distribution will be treated as unclaimed property in accordance with the Plan or the amount required to be withheld may be so withheld and turned over to the applicable authority.

Q.   <u>Time Bar to Cash Payments by Check</u>.   Checks issued by the Debtors or Plan Administrator on account of Allowed Claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof.   Requests for the reissuance of any check that becomes null and void pursuant to this Section may be made directly to the Debtors or Plan Administrator by the holder of the Allowed Claim to whom the check was originally issued.   Any Claim in respect of such voided check must be made in writing on or be-fore the later of (a) the Effective Date and (b) sixty (60) days after the date on which the Distribution was made.   After that date, all Claims in respect of void checks shall be released and forever barred and the proceeds of those checks shall be deemed unclaimed property in accordance with section 347(b) of the Bankruptcy Code and be distributed as provided herein.

R.   <u>Unclaimed Distributions</u>.   All distributions to holders of Allowed Claims under the Plan that are unclaimed for a period of sixty (60) days after distribution thereof shall be deemed unclaimed property under Bankruptcy Code section 347(b), and any entitlement of any holder of any Claim to such distributions shall be extinguished and forever barred.   All such unclaimed property shall revest in the Debtors and be distributed to other holders of Allowed Claims in accordance with the Plan or as otherwise ordered by the Bankruptcy Court.

**<u>ARTICLE VIII – EFFECT OF THE PLAN
ON CLAIMS, INTERESTS AND CAUSES OF ACTION</u>**

A.   <u>Binding Effect</u>. On and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against the Debtors who held such Claim at any time during the Chapter 11 Cases and its respective successors and assigns, whether or not the Claim of such holder is Impaired under the Plan and whether or not such holder has been deemed to accept the Plan.

B.   <u>Vesting of Assets</u>. Except as otherwise explicitly provided in this Plan, on the Effective Date, all property comprising the Estate (including Causes of Action, but excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall vest in the Debtors free and clear of all Claims, liens, charges, interests, and encumbrances.   As of and following the Effective Date, the Debtors may operate or liquidate their business, as applicable, and use, acquire, and dispose of property and settle and compromise Claims, Interests, or Causes of Action without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or

AFDOCS/25153069.2

Bankruptcy Rules, other than those restrictions expressly imposed by this Plan or the Confirmation Order.

C.  Release of Liens.  Except as otherwise provided in this Plan or in any contract, instrument, release, or other agreement or document created pursuant to this Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, and compromised and all rights, titles, and interests of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall revert to the Debtors.

D.  Subordinated Claims.  The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under this Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors reserve the right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto, including but not limited to the Intercompany Liabilities, as set forth herein.

E.  Term of Injunctions or Stays.  Unless otherwise provided, all injunctions or stays arising under or entered during these Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the closing of the Chapter 11 Cases.

F.  Compromise and Settlement of Claims, Interests, and Controversies.  Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to this Plan, the provisions of this Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any Distribution to be made on account of such Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable.  In accordance with the provisions of this Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Plan Administrator may compromise and settle Claims against or Interests in the Debtors and Causes of Action against other Persons.

G.  Discharge. If this Plan is confirmed under Bankruptcy Code section 1191(a), as of the Effective Date, the Debtors will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in Bankruptcy Code section 1141(d)(1)(A), except that the Debtors will not be discharged of any debt imposed by this Plan.

If this Plan is confirmed under section 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan unless the Court grants a discharge on completion of all payments

27

due within the first three (3) years of this Plan, or as otherwise provided in Bankruptcy Code section 1192. The Debtors will not be discharged from any debt on which the last payment is due after the first three (3) years of the Plan, or as otherwise provided in section 1192.

H.  <u>Releases by the Debtor</u>.  Except as otherwise provided herein, in the Plan Supplement, or in the Confirmation Order, as of the Effective Date, for good and valuable consideration, each of (i) the Debtors' current and former officers, directors, principals, members, shareholders, professionals, advisors, accountants, attorneys, investment bankers, consultants, employees, agents, and other representatives of the Debtor, in each case solely in their capacity as such; (ii) ParentCo, its affiliates, and the current and former officers, directors, principals, members, shareholders, professionals, advisors, accountants, attorneys, investment bankers, consultants, employees, agents, and other representatives of ParentCo; and (iii) MOLAGERS, its affiliates, and the current and former officers, directors, principals, members, shareholders, professionals, advisors, accountants, attorneys, investment bankers, consultants, employees, agents, and other representatives of MOLAGERS, in each case solely in their capacity as such, are deemed released and discharged by the Debtors and their Estates from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, arising in law, equity or otherwise that the Debtors or theirs Estates would have been legally entitled to assert in their own right or on behalf of the holder of any Claim or other Person, or which any other Person may have been able to assert derivatively on behalf of the Debtor, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Plan, the negotiation, formulation or preparation of the Plan, the Plan Supplement, or related agreements, instruments, or other documents in connection with the transactions contemplated under the Plan, or any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date (the "<u>Estate Released Claims</u>"); *provided* that nothing in the Plan, including this paragraph shall release (i) any rights or obligations under the Plan, the Plan Supplement, or the Confirmation Order; or (ii) any acts constituting willful misconduct, gross negligence, intentional fraud or criminal conduct as determined by a Final Order.

I.  **<u>Releases by Holders of Claims and Interests</u>.  As of the Effective Date, except as otherwise provided in the Plan, all Persons who have held, hold, or may hold Claims, Interests, causes of action, or liabilities that are subject to compromise and settlement pursuant to the terms of the Plan or are otherwise discharged, satisfied, stayed or terminated pursuant to the Plan, and either: (a) voted to accept this Plan; or (b) did not vote to accept this Plan but checked the box on the applicable Ballot or Notice of Non-Voting Status indicating that they opt to grant the releases provided in this Plan; shall be deemed to have released the Debtors, Estates and each of their affiliates, current and former officers, directors, principals, shareholders, members, professionals, advisors, accountants, attorneys, investment bankers, consultants, employees, agents, and other representatives (collectively, the "<u>Released Parties</u>"), from any and all claims, interests, obligations, rights, suits, damages, causes of action, remedies and liabilities whatsoever, including any direct claims held by any such Person against each Released Party or derivative claims asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, that each such Person would have been legally**

AFDOCS/25153069.2

entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors or their affiliates, the Debtors' restructuring, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any such Person, the restructuring of Claims and Interests before or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan, the Confirmation Order, or related agreements, instruments, or other documents, or upon any other act or omission, transaction, agreement, event, or other occurrence relating to the Debtors taking place on or before the Effective Date (the "**Voluntarily Released Claims**"); *provided* that, notwithstanding anything to the contrary in the foregoing, nothing in the Plan, including this paragraph shall release (i) any rights or obligations under the Plan, the Plan Supplement, or the Confirmation Order; or (ii) any acts constituting willful misconduct, gross negligence, intentional fraud or criminal conduct as determined by a Final Order.

J.   **Exculpation**. The Exculpated Parties shall not have any liability to any Holder of a Claim or Interest for any claims or Litigation Claims arising before, on or after the Petition Date and prior to or on the Effective Date for any act or omission in connection with, related to, or arising out of, the Chapter 11 Cases, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan (the "**Exculpated Claims**"), except for willful misconduct or gross negligence. In all respects, the Exculpated Parties are entitled to rely on the advice of counsel with respect to their duties and responsibilities under the Plan.

K.   **Injunction**.   Except as provided in the Plan or the Confirmation Order, as of the Confirmation Date, all entities that have held, currently hold, or may hold a Claim that is unclassified by the Plan or that is classified by Article III of the Plan or that is subject to a distribution under the Plan, or an Interest or other right of an equity holder, are permanently enjoined from taking any of the following actions on account of any such Claims or Interests or rights: (i) commencing or continuing in any manner any action or other proceeding against any property to be distributed under the Plan; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against any property to be distributed under the Plan; (iii) creating, perfecting, or enforcing any lien or encumbrance against any property to be distributed under the Plan; and (iv) commencing or continuing any action, in any manner, in any place, that does not comply with or is inconsistent with the provisions of the Plan or the Bankruptcy Code, including but not limited to, any action in pursuit or furtherance of, directly or indirectly, any Exculpated Claims, Estate Released Claims, or Voluntarily Released Claims.

L.   Preservation and Application of Insurance. The provisions of this Plan shall not diminish or impair in any manner the enforceability of coverage of any insurance policies (and any agreements, documents, or instruments relating thereto) that may cover Claims against the Debtor, any directors, trustees, or officers of the Debtor, or any other Person, including, without limitation, insurance for the Debtors' directors and officers.

M.   Retention, Reservation and Prosecution of Causes of Action. Except as otherwise provided in the Plan, all Causes of Action are retained and reserved for the Debtors and Plan Administrator,

AFDOCS/25153069.2

which are designated as the Estates' representative under Bankruptcy Code § 1123(b)(3)(B) for purposes of the Causes of Action. The Debtors and Plan Administrator shall have the sole authority to prosecute, defend, compromise, settle, and otherwise deal with any Causes of Action, and does so in its capacity as a representative of the Estate in accordance with Bankruptcy Code § 1123(b)(3)(B). The Debtors and Plan Administrator shall have sole discretion to determine in their business judgment which Causes of Action to pursue, which to settle, and the terms and conditions of those settlements. In pursuing any claim, right, or Cause of Action, the Debtors and Plan Administrator shall be entitled to the extensions provided under section 108 of the Bankruptcy Code. Except as otherwise provided in the Plan, all Causes of Action shall survive confirmation and the commencement or prosecution of Causes of Action shall not be barred or limited by any estoppel, whether judicial, equitable, or otherwise. The Debtors may identify a non-exhaustive list of retained Causes of Action in the Plan Supplement, but such shall not in any way prejudice the Debtors or Plan Administrators ability pursue or continue any Cause of Action retain and preserved for the Estates' representative under this Plan.

## **ARTICLE IX – CONDITIONS TO OCCURRENCE OF EFFECTIVE DATE**

A.   <u>Conditions to Effectiveness</u>. The Effective Date does not occur unless and until:

1.   The Confirmation Date occurs and the Confirmation Order has become a Final Order;

2.   No request for revocation of the Confirmation Order under Bankruptcy Code section 1144 is pending;

3.   All instruments and agreements to be issued, entered into, delivered, or filed under the Plan are issued, entered into, delivered, or filed and are effective.

B.   <u>Waiver of Conditions</u>. The Debtors may waive any condition to confirmation or the Effective Date, in whole or in part, at any time without notice, an order of the Bankruptcy Court, or any further action other than proceeding to confirmation and consummation of the Plan.

C.   <u>Effect of Non-Occurrence of the Effective Date</u>. If the Effective Date does not occur, the Plan shall be null and void and nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims against the Debtor; or (b) constitute an admission, acknowledgement, offer or undertaking by the Debtor.

## **ARTICLE X – MISCELLANEOUS**

A.   <u>Retention of Jurisdiction</u>. Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain non-exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 Cases and the Plan, including jurisdiction to:

1.   resolve any matters related to Executory Contracts and Unexpired Leases, including: (i) the assumption, assumption and assignment, or rejection of Executory Contracts or Unexpired Leases to which the Debtors are a party or with respect to which the Debtors may be liable, and to hear and determine the allowance of Claims resulting

therefrom including the amount of Cure, if any, required to be paid; (ii) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (iii) any dispute regarding whether a contract or lease is or was executory or expired;

2.    adjudicate any and all adversary proceedings, applications, and contested matters that may be commenced or maintained pursuant to the Chapter 11 Case, this Plan, or that were the subject of proceedings before the Bankruptcy Court, prior to the Effective Date, proceedings to adjudicate the allowance of Disputed Claims, and all controversies and issues arising from or relating to any of the foregoing;

3.   ensure that distributions to Holders of Allowed Claims are accomplished as provided herein and adjudicate any and all disputes arising from or relating to distributions under the Plan;

4.   hear and determine or resolve any and all matters related to Causes of Action;

5.   enter and implement such orders as may be appropriate if the Confirmation Order is for any reason stayed, revoked, modified, and/or vacated;

6.   issue and implement orders in aid of execution, implementation, or consummation of this Plan;

7.   consider any modifications of this Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

8.  hear and determine all applications for allowance of compensation and reimbursement of Professional Fee Claims under this Plan or under sections 330, 331, 503(b), 1103, and 1129(a)(4) of the Bankruptcy Code; determine requests for the payment of Claims entitled to priority under section 507(a)(1) of the Bankruptcy Code, including compensation and reimbursement of expenses of parties entitled thereto; adjudicate, decide, or resolve any and all matters related to sections 1192 and/or 1141 of the Bankruptcy Code;

9.  hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with this Plan and disputes arising in connection with any Person or entity's obligations incurred in connection with the Plan;

10. hear and determine all suits or adversary proceedings to recover assets of the Debtors and property of their Estates, wherever located;

11. hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

12. grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code, or in the event

31

that the Effective Date does not occur, to consider any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4);

13. hear any other matter not inconsistent with the Bankruptcy Code;

14. hear and determine all disputes involving the existence, nature or scope of the Debtors' discharge;

15. issue a final decree and enter an order closing the chapter 11 case; and

16. enforce all orders previously entered by the Bankruptcy Court.

After the Effective Date, the Bankruptcy Court shall retain jurisdiction with respect to each of the foregoing items and all other matters that were subject to its jurisdiction prior to the Confirmation Date. Nothing contained herein shall be construed to increase, decrease or otherwise modify the independence, sovereignty or jurisdiction of the Bankruptcy Court.

B. <u>Effecting Documents; Further Transactions; Timing</u>. The Debtors authorized and directed as of the Effective Date, without further order of the Bankruptcy Court, to execute, deliver, file, or record all contracts, instruments, releases, and other agreements or documents, and to take all actions necessary or appropriate to effect and further evidence the terms of the Plan. All transactions required to occur on the Effective Date under the terms of the Plan are deemed to have occurred simultaneously.

C. <u>Governing Law</u>. Except to the extent the Bankruptcy Code, Bankruptcy Rules, or other federal laws apply, the laws of the State of New York shall govern the rights and obligations arising under the Plan, without giving effect to principles of conflicts of law of New York.

D. <u>Exemption from Transfer Taxes</u>. Under Bankruptcy Code § 1146(a): (a) the issuance, distribution, transfer, and exchange of assets or property of the Estate; (b) the execution, assignment, modification, or recording of any lease or sublease; and (c) the execution, delivery, or recording of a deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, the Confirmation Order, or any transaction contemplated above, or any transactions arising out of, contemplated by, or in any way related to, the foregoing are not subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, or real estate transfer tax, or other similar tax or governmental assessment and the appropriate state or local government officials or agents are directed to forego the collection of any such tax or assessment and to accept for filing or recordation any of the foregoing instruments or other documents without the payment of any such tax or assessment.

E. <u>Final Decree</u>. Notice of application for a final decree need be given only to those holders of Claims and Interests and other parties that, after the Effective Date, specifically request such notice.

F. <u>Modification and Amendments</u>. The Debtors may alter, amend, or modify this Plan under section 1193(a) of the Bankruptcy Code at any time prior to the Confirmation Date. After the Confirmation Date and prior to substantial consummation of this Plan as defined in section 1101(2) of the Bankruptcy Code, the Debtors may under section 1193(b) of the Bankruptcy Code, institute

32

proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of this Plan.

G. <u>Revocation, Withdrawal, or Non-Consummation</u>. The Debtors reserve the right to revoke or withdraw this Plan at any time prior to the Effective Date, which revocation or withdrawal shall occur upon the Debtors' filing of a notice thereof, and to file subsequent chapter 11 plans. If the Debtors revoke or withdraw the Plan, it shall be null and void and, in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Causes of Action or Claims by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors.

H. <u>Notices</u>. After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered on the parties below shall be served as follows:

<u>If to the Debtors or Plan Administrator</u>:
Eric Huebscher
Huebscher &Co.
630 3rd Avenue – 21st Floor
New York, NY 10017

With a copy (which shall not constitute notice) to:
Arent Fox LLP
1301 Avenue of the Americas
42nd Floor
New York, NY 10019
Attn: George P. Angelich, Esq.

<u>And</u>

Arent Fox LLP
Prudential Tower
800 Boylston Street, 32nd Floor
Boston, MA 02199
Attn: Justin A. Kesselman, Esq.
Justin.Kesselman@arentfox.com

<u>If to MOLAGERS</u>:

Missouri Local Government Employee Retirement System
701 W. Main Street
POB 1665
Jefferson City, MO 65102
Attn: Megan Loehner

With a copy (which shall not constitute notice) to:
Holland & Knight LLP

AFDOCS/25153069.2

299 Crescent Court
Suite 1600
Dallas, TX 75291
Attn: Brent McIlwain, Esq.

I.    <u>Entire Agreement</u>. Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

J.    <u>Severability</u>. If, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable pursuant to its terms, (b) integral to the Plan and may not be deleted or modified without the Debtors' consent, and (c) nonseverable and mutually dependent.

K.    <u>Exhibits</u>. All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.

L.    <u>Conflicts</u>. Except as set forth in the Plan, to the extent that any provision of any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control; <u>provided, however,</u> that if there is a conflict between this Plan and a Plan Supplement document, the Plan Supplement document shall govern and control.

## <u>ARTICLE XI - CONFIRMATION REQUEST</u>

The Debtors respectfully request Confirmation of the Plan pursuant to section 1129 and 1191 of the Bankruptcy Code.

34

Respectfully submitted, as of January 11, 2022,

**CFX US Co., Inc.**

By:     */s/ Michael G. Long*
Name: Michael G. Long
Title:   Chief Operating Officer


**CFX CDO Co., Inc.**

By:     */s/ Michael G. Long*
Name: Michael G. Long
Title:   Chief Operating Officer

AFDOCS/25153069.2